**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERIC KENNETH JONES,** | : | **CIVIL NO. 1:13-CV-2526** |
| | : | |
| **Petitioner,** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **VINCENT MOONEY, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

The petitioner in this case, Eric Kenneth Jones, is a criminal recidivist,[1] and a previously convicted rapist,[2] who is presently serving a 25-to-50 year sentence in state prison as a sexually violent predator following his January 2009 conviction on a charge of indecent assault by forcible compulsion. This charge related to a December 2007 incident in which Jones forced himself upon a woman while threatening his victim and stating: "don't make me use force."

---

[1] At the time of this December 2007 sexual assault Jones had a criminal history spanning some 20 years. During these two decades of crime Jones had amassed multiple arrests and convictions for assault, burglary, trespass, theft, resisting arrest, harassment, disorderly conduct, criminal mischief, and a host of other alcohol-fueled criminal offenses. (Doc. 40, Ex. C.)

[2] According to the Pennsylvania Superior Court opinion which affirmed the denial of Jones' state post conviction relief act petition, Jones was convicted of rape in 1993. (Doc. 5, Ex. I.)

Jones now seeks to set aside this conviction and sentence, relying upon claims that have either been thoroughly considered and rejected by the state courts, or have never been properly presented to those courts for their consideration. For the reasons set forth below, we recommend that Jones' petition be denied because his various claims are both procedurally defaulted, and without merit.

## II.   **Statement of Facts and of the Case**

### A.   **Factual Background**[3]

The factual backdrop of this case can be simply stated, and arises out of a tawdry attempt by Jones to force himself sexually upon a woman.

On the evening of December 28, 2007, two cousins, Rosemary Bell and Olivia Taylor, went to a local tavern in Harrisburg, where they encountered Cornelius Lamont McCullon, a man who had formerly been engaged to Bell. McCullon, in turn, introduced the women to Eric Kenneth Jones.

As the bar was closing on the early morning hours of December 29, 2007, Bell and Taylor became separated from one another. Jones then offered to escort Bell a short distance from the bar to his home, where he said that her friend McCullon could be found. Bell agreed and accompanied Jones from the bar to his home.

---

[3]The factual background of the case is derived from the transcript of Jones' January 2009, trial. (Doc. 40, Ex. B.)

En route to the residence Jones began making sexual proposals to Bell, telling her "you only live once."  Bell rebuffed these advances but upon arriving at Jones' residence became uncomfortable with Jones' conduct, and excusing herself, went to an upstairs bathroom in the home where she called her cousin, Olivia Taylor, on her cell phone and asked Taylor to come to Jones' residence.

Even as Bell and Taylor were engaged in this cell phone conversation, Jones approached Bell, and took her into an adjacent bedroom.  In the bedroom Jones exposed himself, and demanded that Bell allow him to engage in genital contact with her breasts.  When Bell resisted, Jones forced her onto a bed, attempted to partially disrobe her, placed his genitals on her breasts, and restrained her while also threatening Bell, telling her "don't make me use force."

As Jones and Bell struggled in the upstairs bedroom, her cousin Olivia Taylor arrived at the home accompanied by Bell's former fiancé, Mr. McCullon.  Taylor and McCullon forced their way into the home and came upon Jones, atop Bell forcing himself upon the victim.

A brief struggle then ensued between Jones, Taylor and McCullon, a struggle in which Jones suffered a stab injury.  With Jones disabled, Bell, Taylor and McCullon were then able to flee the residence and contact police.  Police then responded to Jones' residence where they found him outside, bleeding.  After Bell went to Jones'

residence and identified him as her attacker police arrested Jones, charging him with Indecent Assault without Consent, Indecent Assault by Forcible Compulsion, Unlawful Restraint, and Unlawful Possession of Drug Paraphernalia.  With respect to the Indecent Assault by Forcible Compulsion charge, the criminal information initially filed against Jones alleged two means by which he committed this criminal act, stating "Defendant pulled victim's shirt exposing breasts as he held her down.  Put mouth on her breast and rubbed his penis between her breasts." (Doc. 5, Ex. K).

This case then proceeded to trial on January 12-14, 2009. (Doc. 40, Ex. B.)  At Jones' trial, Bell and Taylor both testified, describing a sexual assault in which Jones used threats and violence to force himself upon Bell and place his genitals on her breasts.  No testimony was produced relating to the separate allegation contained in the information that Jones had also placed his mouth on his victim's breasts, and at the conclusion of the evidence the prosecutor moved to amend the criminal charge to conform with the proof and allege a single means by which this offense was committed.  That motion was granted by the trial judge without objection by the defense.  The case was then submitted to the jury, which returned a verdict convicting Jones of Indecent Assault by Forcible Compulsion, and acquitting him of Unlawful Restraint and Possession of Drug Paraphernalia.  The jury could not reach a verdict on Indecent Assault without Consent and a mistrial was declared as to the charge.

Jones was then sentenced on July 13, 2009. (Doc. 40, Ex. A.)  At sentencing the court found finding that Jones qualified under Pennsylvania law as a sexually violent predator, a finding which Jones does not contest in this petition.  Accordingly,  Jones was sentenced to a 25-to-50 year term of imprisonment.  (Id.)

Jones then began a halting, haphazard and erratic course of post-conviction litigation.  Thus, following his conviction, Jones' direct appeal rights lapsed.  Jones was, therefore, compelled to file a state post-conviction petition simply to restore his appellate rights and regain a direct appeal of this conviction.  That direct appeal was unavailing, however.  Jones' counsel was unable to identify any meritorious issues on appeal, and filed an Anders brief.  The Superior Court then affirmed this conviction and sentence on November 3, 2010.

Ten months passed before Jones filed a *pro se* post conviction relief act petition with the trial court on September 15, 2011.  On September 26, 2011, trial court appointed counsel to represent Jones in this post conviction petition.  After carefully reviewing Jones' claims, on January 31, 2012, counsel filed a Motion to Withdraw, stating that there was no merit to Jones' claims.  After an independent review of the petition, the trial court granted counsel's withdrawal.  (Doc. 5, Ex. D-2 and H).  On April 11, 2012, the trial court then denied Jones' petition.

Jones appealed this decision to the Pennsylvania Superior Court. In this appeal,

Jones defined his post-conviction claims in the following terms:

> 1. Was trial counsel ineffective for not objecting to district attorney's amended verdict slip; in deleting an accusation which gave rise to Appellant's charge of indecent assault[?]
>
> 2. Did trial court err in dismissing PCRA without a hearing for Appellant to develop his claims[?]
>
> 3. Did appointed counsel for PCRA misstate his review in order to withdraw in his motion[?]

(Doc. 40, Ex. D.)

While Jones then later attempted to argue other issues in his appellate brief, beyond

those which he had initially defined, the Superior Court, relying upon established

Pennsylvania procedural rules, rebuffed this effort to belatedly add claims to this

appeal, stating:

> In his Rule 1925(b) statement, at Issue No. 1, Jones made two claims of trial counsel's ineffectiveness, however, in his appellate brief only one, failure to object to the deletion of "an accusation which gave rise to Jones' charge of indecent assault" was argued. With respect to the second claim, it is waived. See Pa.R.A.P. 2119(a) requiring pertinent argument and citation of authority for each question to be argued. See also Commonwealth v. Clayton, 572 Pa. 395, 816 A.2d 217 (2002) (recognizing failure to develop argument in support of issue results in waiver).

(Doc. 5 Ex. I at 4 n. 3.)

The Superior Court also affirmed the denial of this post-conviction petition.  In reaching this result the court expressly considered, and rejected, Jones' claim that the amendment of the criminal information at trial, an amendment which narrowed the charge and conformed that charge to the proof at trial, unfairly prejudiced the defendant.   Instead, the Superior Court noted that this practice is specifically authorized under Pennsylvania's procedural rules and resulted in no unfair prejudice to Jones since he had ample notice that the Commonwealth intended to prove that he committed an indecent assault by forcing his genitals onto the victim's breasts.  (Id.) Jones then filed a petition for allowance of appeal with the Supreme Court of Pennsylvania on April 17, 2013, which the Supreme Court denied on August 26, 2013. (Id., Ex. J).

On October 7, 2013, Jones filed this petition for writ of habeas corpus in federal court.  In his petition, Jones reprises the one fully exhausted claim which he previously litigated in his state post-conviction proceedings; namely, Jones' contention that the narrowing amendment of his criminal information to conform with the proof at his trial raised prejudicial issues of a constitutional dimension compelling federal habeas corpus relief.  Jones then appended to this petition a series of additional claims, none of which had previously been properly preserved, or fully considered, by the state courts.  These procedurally unexhausted claims included: (1) Jones' assertion that his

trial counsel was ineffective for failing to object to a police officer's testimony that he arrived on the scene of this sexual assault after receiving a report of a rape; (2) Jones' allegation that counsel was ineffective for filing to object to the victim's testimony that Jones threatened her, stating "don't make me use force;" and (3) Jones' claim that counsel erred in filing an <u>Anders</u> brief in the course of his direct appeal. (<u>Id</u>.) On the basis of these claims, which have either been thoroughly discredited by state courts or never properly and fully presented to those courts, Jones now seeks habeas corpus relief.

Jones' claims have been fully briefed by the parties (Docs. 1, 5, 21, 40, and 48.), and are now ripe for resolution. For the reasons set forth below, it is recommended that the petition be denied since Jones' complaints are either procedurally barred or without merit.

## II.   <u>Discussion</u>

### A.   <u>State Prisoner Habeas Relief–The Legal Standard</u>

A state prisoner seeking to invoke the power of this court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on

the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

**(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

**(A)** the applicant has exhausted the remedies available in the courts of the State;

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

## 1.   Substantive Standards For Habeas Petitions

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief.  At the outset, a petition must satisfy exacting substantive standards to warrant relief.  Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts.  Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which

inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure.  See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994).  Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension.  See Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

These principles apply with particular force to claims of ineffective assistance of counsel.  A petitioner like Jones faces an exacting burden when he collaterally challenges a conviction and sentence based upon the alleged ineffectiveness of counsel.  As the Supreme Court has noted:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or... sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or... sentence resulted from a breakdown in the adversary process that renders the results unreliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).

Thus, in order to succeed in a claim of ineffective assistance of counsel, the petitioner must show both "cause"; that is, a legally deficient performance by counsel,

and "prejudice" resulting from that ineffective performance.  With respect to the first element of this test, in assessing the competence of counsel, "[j]udicial scrutiny of counsel's performance must be highly deferential, " id. at 689, and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

### 2.   Deference Owed to State Court Rulings

These same principles which inform the standard of review in habeas petitions and limit habeas relief to errors of a constitutional dimension also call upon federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts in the course of state criminal proceedings.  There are two critical components to this deference mandated by 28 U.S.C. § 2254.

First, with respect to legal rulings by state courts, under §2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either:  (1) "contrary to" or involved an unreasonable application of clearly established case law; see 28 U.S.C. §2254(d)(1); or (2) was "based upon an unreasonable determination of the facts," see 28 U.S.C. §2254(d)(2).  Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts.  See Rice v. Collins,

546 U.S. 333, 338-39 (2006); see also Warren v. Kyler, 422 F.3d 132, 139-40 (3d Cir. 2006);  Gattis v. Snyder, 278 F.3d 222, 228 (3d Cir. 2002).

These deferential standards of review also guide our assessment of the legal claims concerning the effectiveness of counsel.  Thus, the state courts' decisions applying the Supreme Court's Strickland standard for assessing the competence of counsel must be upheld unless it can be shown that these decisions were either:  (1) "contrary to" or involved an unreasonable application of clearly established case law; see 28 U.S.C. §2254(d)(1); or (2) were "based upon an unreasonable determination of the facts," see 28 U.S.C. §2254(d)(2).  See, e.g., Roland v. Vaughn, 445 F.3d 671, 677-78 (3d. Cir. 2006) (applying § 2254(d) standard of review to ineffectiveness claim analysis); James v. Harrison, 389 F.3d 450, 453-54 (4th Cir. 2004)(same).  Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts.  See Rice v. Collins,  546 U.S. 333, 338-39 (2006); see also Warren v. Kyler, 422 F.3d 132, 139-40 (3d Cir. 2006);  Gattis v. Snyder, 278 F.3d 222, 228 (3d Cir. 2002).  As the Supreme Court has explained:

> If an application includes a claim that has been "adjudicated on the merits in State court proceedings," § 2254(d), an additional restriction applies. Under § 2254(d), that application "shall not be granted with respect to [such a] claim ... unless the adjudication of the claim":

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

"(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

This is a "difficult to meet," Harrington v. Richter, 562 U.S. ——, ——, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011), and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam) (citation and internal quotation marks omitted). The petitioner carries the burden of proof. Id., at 25, 123 S.Ct. 357.

Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).

This rule applies with particular force to habeas claims premised on the alleged ineffectiveness of counsel. In such instances we are cautioned that our review of the state court's rulings should be " 'doubly deferential.' Knowles v. Mirzayance, 556 U.S. ——, ——, 129 S.Ct. 1411, 1413, 173 L.Ed.2d 251 (2009) (citing Yarborough v. Gentry, 540 U.S. 1, 5–6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam) )[in that ] [w]e [should] take a 'highly deferential' look at counsel's performance, Strickland, supra, at 689, 104 S.Ct. 2052, through the 'deferential lens of § 2254(d),' Mirzayance, supra, at ——, n. 2, 129 S.Ct., at 1419, n. 2." Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011).

In addition, § 2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous.   See 28 U.S.C. §2254(e)(1).   This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made in the course of criminal proceedings.   See, e.g., Maggio v. Fulford, 462 U.S. 111, 117 (1983) (per curiam); Demosthenes v. Baal, 495 U.S. 731, 734-35 (1990)

### 3.   Procedural Thresholds for Section 2254 Petitions

#### a.   Exhaustion of State Remedies and Procedural Default

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards.   Among these procedural prerequisites is a requirement that the petitioner " has exhausted the remedies available in the courts of the State" before seeking relief in federal court.   28 U.S.C. § 2254(b).   In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus.   See Whitney v. Horn, 280 F.3d. 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights.

O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999).  As the Supreme Court has aptly observed:  "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation.   Rose v. Lundy, 455 U.S. 509, 518 (1982).   Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a § 2254 petition.  Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995).  A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts.  Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982).  A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court."  Parker v.Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

While this exhaustion requirement compels petitioners to have previously given the state courts, a fair "opportunity to apply controlling legal principles to the facts

bearing upon [the petitioner's] constitutional claim," Picard v. Connor, 404 U.S. 270, 276 (1971), this requirement is to be applied in a commonsense fashion.  Thus, the exhaustion requirement is met when a petitioner submits the gist of his federal complaint to the state courts for consideration, without the necessity that the petitioner engage in some "talismanic" recitation of specific constitutional claims.  Evans, 959 F.2d at 1230-33.  Similarly, a petitioner meets his obligations by fairly presenting a claim to the state courts, even if the state courts decline to specifically address that claim.  See Dye v. Hofbauer, 546 U.S. 1(2005) (per curiam); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004).

A necessary corollary of this exhaustion requirement is the procedural default doctrine which applies in habeas corpus cases.  Certain habeas claims, while not exhausted in state court, may also be incapable of exhaustion in the state legal system by the time a petitioner files a federal habeas petition because state procedural rules bar further review of the claim.  In such instances:

> In order for a claim to be exhausted, it must be "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If a claim has not been fairly presented to the state courts and it is still possible for the claim to be raised in the state courts, the claim is unexhausted. . . .
>
> If a claim has not been fairly presented to the state courts but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play.  A procedural default occurs

when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule. Federal courts may not consider the merits of a procedurally defaulted claim unless the applicant establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d. Cir. 2002)(citations omitted).

"[A] federal court will ordinarily not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus '[o]ut of respect for finality, comity, and the orderly administration of justice.' This is a reflection of the rule that 'federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds.'." Hubbard v. Pinchak ,378 F.3d 333, 338 (3d. Cir. 2004)(citations omitted). Given these concerns of comity, the exceptions to the procedural default rule, while well-recognized, are narrowly defined. Thus, for purposes of excusing a procedural default of a state prisoner seeking federal habeas relief, "[t]he Supreme Court has delineated what constitutes 'cause' for the procedural default: the petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Werts v. Vaughn, 228 F.3d 178, 192-193 (3d. Cir. 2000)(citations omitted). Similarly, when examining the second component of this "cause and prejudice" exception to the procedural default rule, it is clear that:

> With regard to the prejudice requirement, the habeas petitioner must prove " 'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' " This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial. In the context of an ineffective assistance claim, we have stated that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."

Id. at 193 (citations omitted).

This "miscarriage of justice" exception to this procedural bar rule is also narrowly tailored, and requires a credible assertion of actual innocence to justify a petitioner's failure to comply with state procedural rules. Hubbard v. Pinchak, 378 F.3d 333, 338 (3d. Cir. 2004).

Procedural bar claims typically arise in one of two factual contexts. First, in many instances, the procedural bar doctrine is asserted because an express state court ruling in prior litigation denying consideration of a habeas petitioner's state claims on some state procedural ground. In such a situation, courts have held that:

> A habeas claim has been procedurally defaulted when "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). For a federal habeas claim to be barred by procedural default, however, the state rule must have been announced prior to its application in the petitioner's case and must have been "firmly established and regularly followed." Ford v. Georgia, 498 U.S. 411, 423-24, 111 S.Ct. 850, 112

L.Ed.2d 935 (1991).   Whether the rule was firmly established and regularly followed is determined as of the date the default occurred, not the date the state court relied on it, <u>Doctor v. Walters</u>, 96 F.3d 675, 684 (3d Cir.1996), because a petitioner is entitled to notice of how to present a claim in state court, <u>Ford</u>, 498 U.S. at 423-424, 111 S.Ct. 850.

<u>Taylor v. Horn,</u> 504 F.3d 416, 427-428 (3d. Cir.2007).

In other instances, the procedural bar arises, not because of an express state court ruling, but as a consequence of a tactical choice by a habeas petitioner, who elects  to waive or forego a claim in the course of his state proceedings, and thus fails to fully exhaust the claim within the time limits prescribed by state statute or procedural rules.   In such instances the petitioner's tactical choices in state court litigation also yield procedural defaults and waivers of claims federally.   <u>See, e.g.,</u> <u>Johnson v. Pinchak</u>, 392 F.3d 551(3d. Cir. 2004)(procedural default when petitioner failed to timely pursue state claim); <u>Hull v. Freeman</u>, 991 F.2d 86 (3d. Cir. 1993)(same).   Accordingly, a petitioner's strategic choices in state court waiving or abandoning state claims may act as a procedural bar to federal consideration of his claims, unless the petitioner can show either "cause and prejudice" or demonstrate a "fundamental miscarriage of justice."   <u>Id</u>.

### B.   Jones' Petition Should be Denied Because His Claims Are Procedurally Barred Or Without Merit

#### 1.   With One Exception Jones' Claims Are Procedurally Barred

These settled legal tenets dictate the outcome in this case.  At the outset, it is evident that Jones' failure to timely bring a number of his claims in state court now procedurally bars him from pursuing these claims set forth in his federal petition.  As we have noted, Jones' petition sets forth a series of claims, none of which had previously been properly preserved , or fully considered, by the state courts.  These procedurally unexhausted claims included:  (1) Jones' assertion that his trial counsel was ineffective for failing to object to a police officer's testimony that he arrived on the scene of this sexual assault after receiving a report fo a rape; (2) Jones' allegation that counsel was ineffective for filing to object to the victim's testimony that Jones threatened her, stating "don't make me use force;" and (3) Jones' claim that counsel erred in filing an <u>Anders</u> brief in the course of his direct appeal.  Jones' failure to raise these claims in an earlier, and procedurally appropriate, fashion in state court now acts as a procedural bar to pursuit of these unexhausted yet procedurally defaulted claims in this federal habeas proceeding.  <u>See, e.g.,</u> <u>Johnson v. Pinchak</u>, 392 F.3d 551(3d. Cir. 2004)(procedural default when petitioner failed to timely pursue state claim); <u>Hull v. Freeman</u>, 991 F.2d 86 (3d. Cir. 1993)(same).  Applying the procedural bar rule we find

that Jones has failed to fully and properly litigate in state court the merits of all his claims of ineffective assistance of counsel, except for those claims relating to the amendment of his criminal information to conform with the proof at his trial, and this default now bars us from belated consideration of these issues in this federal habeas petition.  Id.[4]

2. **Jones is Not Entitled to Federal Habeas Corpus Relief Based Upon The Fact That the Trial Judge Granted a Motion to Amend His Criminal Information, a Motion Which Narrowed The Charges and Conformed Those Charges to the Proof at Trial**

The sole remaining, fully exhausted claims in Jones' federal habeas corpus petition are his claims that the trial judge erred in granting the motion to amend his

---

[4]In any event we also note that a number of the belated, unexhausted and procedurally defaulted claims that Jones now articulates in his federal habeas corpus petition are entirely meritless.  For example, Jones complains that his counsel failed to object to testimony regarding a threat that Jones made to his victim, telling her "don't make me use force."  In a sexual assault case involving a charge of indecent assault by forcible compulsion the defendant's threat to use forcible compulsion is plainly relevant and admissible.  There was no error in admitting this evidence, and trial counsel was not ineffective for failing to pursue an objection without merit.  Similarly, Jones was not unfairly prejudiced by a police officer's statement that he arrived at Jones' home responding to a rape call.  At trial the jury had already heard ample testimony regarding a sexual assault that Jones' had committed in this home on the night of his arrest.  The jury also knew that Bell, the victim of this assault, had called the police to report the attack.  Therefore, the fact that the police were summoned to investigate a sexual assault at Jones' home was hardly surprising, or unfairly prejudicial to the defense at trial.  This claim also patently lacks merit.

criminal information, and Jones' related assertion that his trial counsel was constitutionally ineffective for failing to object to this amendment of the charges at trial. Jones invites us to find that this event was a prejudicial error of constitutional dimension even though the amendment actually narrowed the charges, and simply conformed those charges to the proof at trial in a fashion which presented no unfair surprise to the defense which had been fully informed of the nature of the allegations more than a year prior to trial.

We should decline this invitation to convert the commonplace event of conforming a charging document to correspond with the proof at trial into an infraction of constitutionally significant proportions. Indeed, Jones' argument on this score fails for at least three reasons. First, this argument ignores the fact that Pennsylvania procedural rules specifically authorize the amendment of charging documents in the fashion that occurred here, and states that: "The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice." Pa.R.Crim.P., Rule 564. Here the amendment of the criminal information did not in any fashion alter the charges. Rather, it simply

eliminated one factual averment concerning how the crime was allegedly committed, an averment that was not supported by the evidence presented at trial. Since such amendments are specifically authorized by the Pennsylvania procedural rules, this trial court ruling permitting the amendment of the criminal information does not rise to the level of a constitutional infraction warranting habeas corpus relief.

Furthermore, Jones' petition ignores the findings of the Pennsylvania Superior Court, which considered this issue and concluded that Jones was not prejudiced by the amendment of this charging document to conform with the proof at trial. These findings are also fatal to this federal habeas corpus petition since § 2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. See 28 U.S.C. §2254(e)(1). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made in the course of criminal proceedings. See, e.g., Maggio v. Fulford, 462 U.S. 111, 117 (1983) (per curiam); Demosthenes v. Baal, 495 U.S. 731, 734-35 (1990). This principle applies to state court factual findings made both by the trial court and state appellate courts. Rolan v. Vaughn, 445 F.3d 671 (3d Cir. 2006). Thus, we may not re-assess credibility determinations made by the state courts, and we must give equal deference to both the explicit and implicit factual findings made by the state

courts.  Weeks v. Snyder, 219 F.3d 245, 258 (3d Cir. 2000).  Accordingly, in a case

such as this, where a state court judgment rests upon factual findings, it is well-settled

that:

> A state court decision based on a factual determination, . . . , will not be
> overturned on factual grounds unless it was objectively unreasonable in
> light of the evidence presented in the state proceeding.  Miller-El v.
> Cockrell, 537 U.S. 322 (2003).  We must presume that the state court's
> determination of factual issues was correct, and the petitioner bears the
> burden of rebutting this presumption by clear and convincing evidence.
> 28 U.S.C. § 2254(e)(1); Campbell v. Vaughn, 209 F.3d 280, 285 (3d
> Cir.2000).
>
> Rico v. Leftridge-Byrd,  340 F.3d 178, 181 (3d Cir. 2003).

Applying this standard of review, federal courts may only grant habeas relief

whenever "[o]ur reading of the PCRA court records convinces us that the Superior

Court made an unreasonable finding of fact." Rolan v. Vaughn, 445 F.3d 671, 681 (3d

Cir. 2006).

Here the state court findings that Jones was not unfairly prejudiced by the

amendment of this charge to conform with the proof is fully supported by the record.

That record shows that Jones had been aware since his December 2007 that he was

charged with indecent assault, in part because it was alleged that  "Defendant pulled

victim's shirt exposing breasts as he held her down. . . . and rubbed his penis between

her breasts." (Doc. 5, Ex. K).  This conduct is precisely what the Commonwealth

proved at trial in January of 2009.  The fact that the Commonwealth did not also prove the additional allegation that Jones placed his mouth on the victim's breasts was a matter of no moment, and Jones cannot credibly assert that he was unfairly prejudiced by the amendment of the charge in a manner that was congruent with the evidence.

Finally, Jones' efforts to convert this trial ruling into some sort of constitutional error warranting extraordinary federal habeas corpus relief runs afoul of a rising tide of case law rejecting precisely this type of claim, an assertion that the amendment of criminal charges to conform with the proof constitutes a prejudicial error that is constitutional in its scope.  Quite the contrary, federal courts that have considered this issue have frequently rejected claims like those made here by Jones that the amendment of a charging document which narrowed the charges in a fashion consistent with the proof violated the petitioner's constitutional rights.  See e.g., Pinkney v. Sec'y, DOC, No. 2:10-CV-744 FTM 38, 2014 WL 4542962, at *1 (M.D. Fla. Sept. 12, 2014); Siqueiros v. Knipp, No. C 08-2939 MMC PR, 2012 WL 2395197, at *12 (N.D. Cal. June 25, 2012); Tam Huynh v. Archuleta, No. 06-C-02118 CMA CBS, 2009 WL 798846 (D. Colo. Mar. 24, 2009); Byrd v. Israel, 513 F. Supp. 1077 (E.D. Wis. 1981).

These cases all recognize a fundamental truth:  the amendment of a criminal charge, or any variance between the charge and the proof at trial, only provides grounds for setting aside a conviction:

> [I]f it is likely to have surprised or otherwise has prejudiced the defense. United States v. Schurr, 775 F.2d 549, 553–54 (3d Cir.1985).   To demonstrate prejudice from a variance, a defendant "must show (1) that there was a variance between the indictment and the proof adduced at trial and (2) that the variance prejudiced some substantial right." United States v. Balter, 91 F.3d 427, 441 (3d Cir.1996).  "A variance does not prejudice a defendant's substantial rights (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, [or] (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense." United States v. Schoenhut, 576 F.2d 1010, 1021–22 (3d Cir.1978).

United States v. Daraio, 445 F.3d 253, 262 (3d Cir. 2006).

Jones has made no such showing of prejudice in this case, nor can he.  Jones cannot show that he was prejudiced by this amendment of the charges because he had known from shortly after his December 2007 arrest that the charges leveled against him involved allegations that the "Defendant pulled victim's shirt exposing breasts as he held her down. . . . and rubbed his penis between her breasts."  (Doc. 5, Ex. K). This alleged criminal conduct is exactly what the Commonwealth proved in a compelling fashion at Jones' trial in January of 2009.  Since Jones knew of  these allegations for a year prior to trial, he can hardly contend that the failure to plead and

prove more than this criminal misconduct was unfairly prejudicial to him, and he is not entitled to habeas corpus relief on these grounds.

In sum, Jones' current legal predicament is not a function of a fundamentally erroneous ruling amending his criminal information. Nor is it a product of ineffective assistance of counsel, as Jones alleges. Rather, Jones' situation is a consequence of Jones' conduct, and Jones' choices, choices that entailed sexually predatory behavior on December 29, 2007. Since Jones' claims are either procedurally barred or completely without merit, it is recommended that this petition for writ of habeas corpus be denied.

## IV. <u>Recommendation</u>

Accordingly, for the reasons set forth above, IT IS HEREBY RECOMMENDED THAT the petition for habeas corpus (Doc. 1.) be DENIED. IT IS FURTHER RECOMMENDED THAT a certificate of appealability should not issue in this case. The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the

basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 26th day of June 2015.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge